The Chief Justice delivered the opinion of the court as follows:
Adam Brewer being seized in fee simple of certain real estate in the county of Monmouth, made his will in the year 1768, which, after his death, was proved and recorded in the year 1769, and thereby, among other things, ho devised as follows : “ Item. I give and bequeath unto my son Eleazarus Brewer all my lands and interest in lands lying on the west side of Mingemihole brook, except one acre of land, which I reserve for the use of a burial burying yard, where the burying yard now is, which I give and bequeath to him and his heirs forever, and also one-half of my grist-mill, and one-half acre of land about it, which I give to him and his heirs, and after the decease of my son Eleazarus Brewer, I give and devise to my grandson Adam Brewer, son of Eleazarus Brewer, all of the above mentioned lands lying on the west side of Mingemihole brook, and mill and burying yard, and half an acre, and half an acre of, about the mill, which I give to him and his heirs and assigns forever.”
The question hi this cause is, what estate was devised to Eleazarus Brewer, who on the decease of his father, Adam, the testator, entered upon and took possession of the premises in controversy. If an estate for life with a vested remainder in fee simple to his son Adam, as is said by the plaintiff's counsel, the plaintiff is entitled to recover. If an estate in fee simple, as is said by the defendants’ counsel, judgment should be for the defendant.
It was agreed by the counsel on both sides, upon the argument at the bar, that the words “ to him and his heirs ” *64 are connected with the lands lying on the west side of the brook as well as with the grist-mill and half acre of land about it. Such would be the palpable construction if the *50] exception of the burying yard had not *been expressed; and it is not the less so'on that account; for the object of the testator in the introduction of that exception was clearly, to preserve the burying yard for the use of the family, although giving the ownership of it to his son Eleazarus in the same manner he meant to give him the other real estate. Moreover, he includes all in the devise to Adam, supposing obviously that all stood on the same footing as far as respected the devise to Eleazarus.
The devise under consideration, stripped of local description is, to Eleazarus and his heirs, and after his decease, to his son Adam and to his heirs and assigns forever.
It is not unworthy of remark, that filled as our books are with reports on wills, no case has been found presenting a similar devise and shewing its just construction. The fact furnishes another illustration of the never ending variety of litigation with which the wit and the wisdom, or the ignorance and folly of mankind, are likely to supply the tribunals of justice. Having made the remark, it is proper to add that the want of precedent will be deemed unimportant, if the light of principle can be found to guide us.
The first member of the devise, to Eleazarus and his heirs, is clearly a fee simple. The obscurity wholly arises from the subsequent words, after his decease to his son Adam and his heirs and assigns forever. These words, it is contended, however fully the former might give Eleazarus a fee simple, leave him only an estate for life. And they produce this effect, it is said either, 1st. By reducing to an estate for life the legal operation of the preceding words ; or 2d. By being the last of two inconsistent and irreconcilable clauses, and, therefore, in a will, to prevail,-as being the last expression of the mind of the testator. On one of these grounds, the claim of the plaintiff, if a valid one, must be sustained. Let us then proceed to examine them.
*65 1. Tho effect of the subsequent words to reduce the estate plainly designated by the previous words.
A qualifying, limiting, restraining power is often times due and justly given to subsequent words or clauses.
There is a numerous class of cases in which the estate in fee simple naturally imported by a devise to a man and his heirs is reduced to an estate tail, or rather in which on the whole will, other parts taken in conjunction with these words, an estate tail only is said to be created. Thus where a devise is to A. and his heirs, and if he die without heirs, to his brother B. and his heirs. *Webb v. Hearing, Cro. Jac. 415; Tyte v. Willis, Ca. [*51 temp. Talbot 1; Attorney General v. Gill, 2 P. Wms. 369; Morgan v. Griffiths, Cowp. 234. In such cases inasmuch as A. cannot die without heir, living B., it is manifest the testator did not use the word heirs, in its general and comprehensive signification, nor intend by it the whole class of persons within the range of its technical extent, but employed it in a limited sense. The intent of tho testator is pursued, his meaning of the word is adopted, and it signifies as the testator designed, heirs of the body, and as such is held to create an estate tail.
So when a devise is made to a person and his heirs, and in the same, or some other clause, a devise over is made, if the first devisee shall die without issue. To A. and his heirs, and if he die without issue, to B. and his heirs. Soule v. Gerrard, Cro. Eliz. 525; Browne v. Jerves, Cro. Jac. 290; Brice v. Smith, Willes 1; Doe v. Wichelo, 8 Term Rep. 211. The subsequent words or clause, if he die without issue, are held to shew that the testator did not use the word heirs, in its broad, technical signification, but as equipollent with the word issue, and embracing the same limited class of heirs. Hence, the intent of the testator in the expressions he has used is followed ; the wmrd heirs is not rejected; its just operation and extent are given to it; and the first devisee is held to receive an estate tail.
*66 There is another numerous class of cases, where a devise to a man and to the heirs of his body, is held not to vest an estate tail, the natural import of the words; but an estate for life only, in the first devisee ; because by reason of words or phrases connected with the term, heirs of the body, it abundantly appears that the testator did not use those words as words of limitation, or words designed to shew the nature and quantity of the estate given to the first devisee, but as words of purchase, or words designed to shew who should take the premises on the determination of the estate of the first devisee. And hence in such cases to carry into effect the intention of the testator, the first devisee is held to take an estate for life only. In the case of Lowe v. Davies and others, 2 Ld. Raym. 1561, the devise was to the testator’s wife for life, and after her decease to his sou Benjamin and his heirs lawfully to be begotten, that is to say, to his first, second, third, and every son and sons successively lawfully to be begotten of the body of the said Benjamin, and the heirs of the body of such first, second, *52] third and every *other son and sons successively lawfully issuing as they shall be in seniority of age, &c., and in default of such issue, to his right heirs forever. It -was held that B. did not take an estate tail but an estate for life. The case of Doe v. Laming, 2 Burr. 1100, was a devise of gavelkind lands “ to A. C., and to the heirs of her body lawfully begotten or to be begotten, as well females as males, and to their heirs and assigns forever, to be divided equally share and share alike, as tenants in common and not . as joint tenants.” The court held that, the other words . connected with the term, heirs of the body, clearly evinced that the testator did not thereby mean to shew the quantity . of estate given to A. 0., but to designate-the persons who should take the property after her. decease; and it was adjudged that she took an estate for life, and her children . an estate in fee .as. purchasers. In the case of Doe v. Goff, 11 East, 668, the devise was “unto my daughter Mary and *67 to the heirs of her body lawfully begotten or to be begotten, as tenants in common and not as joint tenants.” The court said, “ the words heirs of the body, are undoubtedly prima facie words of limitation, but they may be construed to be words of purchase where it is clearly so intended, and we think that in this case such intention is clear. The provision that they should take as tenants in common and not as joint tenants, shows very distinctly that the testator was contemplating something very different from an estate tail. The obvious intention is to give Mary Goff an estate for life and her children a distinct, independent interest as tenants in common.”
It will he observed that the governing principle in all these cases is the intention of the testator.
There is another train of cases, where such intention not being found, or the intention appearing doubtful, the words heirs or heirs of the body, are allowed their full, broad, technical operation.
Thus in the cases of Parker v. Thatcher, 3 Lev. 70; Nottingham v. Jennings, 1 Salk. 233; 1 Ld. Raym. 568; 1 P. Wms. 23; Crumble v. Jones, 2 Eg. ca. abr. 300; 11 Mod. 207; Tilbury v. Barbut, 3 Atk. 617; 1 Vez. sen. 89, and many others, where the devise has been to a man and his heirs, and in case he die without heirs, to another and his heirs, such other not being capable of taking by descent from the first devisee, he has been held to take an estate in fee simple. In Bendloe, 207. pl. 244; 14 Eliz. it is said that by the opinion of all the justices of the common bench, if a man seized of "‘lands held in socage in fee, in his last will by writing [*53 devise those lands to one B. and the heirs of his body begotten, and he wills besides by the same will that if the said B. die, the said lands remain to another in fee, that still the said devisee has an estate in tail by the said first words of the said devise, and not an estate for life by the last words .thereof. In Atkins case, Moore's Reports 593, *68 reported somewhat more fully in Croke Eliz. 248, I. S. devised lands to S. and the heirs of his body, and after his decease to B. the eldest son of S. and to the heirs of his body, the remainder over to three other sons of S. in the same manner. The question was what estate S. had. On. the one side it was argued he had an estate for life, with remainder to his sons as purchasers. On the other hand that he had an estate tail, for by the first words an express-estate tail was given to him, and there are no special words-to correct or alter them: and it was adjudged that S. had an estate tail. In Preston v. Furnel, Willes 164, the devise was “unto my brother Thomas Eagle for and during his life, and then the houses and lands to the nearest of my relations, that is to say, to Thomas Eagle my brother’s son, to him and his heirs forever — and after their deceases, to the next of kindred to me, first male and then female, which said lands and houses are never to be sold and to be kept up in good repair, and this house wherein I now dwell is to descend to the name of the Eagles and to be kept up as-long as the world shall endure and never to be sold.” The-question was whether Thomas Eagle, the testator’s brother’s-son, took an estate in fee or in tail by the devise: And the court was of opinion, that the devise to Thomas, the son of the testator’s brother, must be taken in its legal and natural construction, and that consequently he took an estate in fee.
From this examination of the cases, and there are a multitude of others, two points are shown, 1st. the power of the-court to abridge, limit or restrain the general operation of the words, 2d. the ground on which this power may be exercised. It is to subserve the intention of the testator. Whenever it clearly and to demonstration plain appears that the words used by the testator were not used in their technical sense, but according to a vocabulary of his own, they are to have the signification he designed for them if consistent with the rules of law, that is to say, if the nature *69 ■of the estate which he meant to create is not prohibited by law. It further appears from the cases that whenever the general extent of the *words has been restrained or [*54 abridged, some effect, some influence, some meaning, is ■nevertheless always attached to them, not precisely what, ■standing alone, the law would attach to them, but precisely that which is clearly shown to comport with the intention ■of the testator. Here, then, an extremely important question presents. How is this intention to be ascertained ? From the words of the will. Ex visceribus testamenta And the rules, founded in good sense, sound logic and indisputable law, are thus laid down by Lord Kenyon in 2 D. ‘and E. 490, “ there is no doubt but that formal words may be controlled by the context of the will, but we ought not to neglect the legal meaning of those words unless we are clear that in so doing we give effect to the devisor’s intentioq.” And by Justice Bullor, in Doug. 341, “if a testator make use of legal phrases or technical words only, the court are bound to understand them in the legal sense. They have no right or power to say the testator did not understand the meaning of the words he has used, or to put a construction upon them different from what has long been received or what is affixed to them by the law. But if a testator use other words which manifestly indicate what his intention was and shew to a demonstration that ho did not mean what the technical words import in the sense which the law has imposed on them, that intention must prevail, notwithstanding he has used such technical words in other parts of the will.”
Now the words, in the clause which has been stated, of the will of Adam Brewer, are all purely technical, to Eleazarus and his heirs, and after his decease to Adam and his heirs. There are no words in the will which shew to a demonstration that the testator did not mean what the technical words import, and if we have no right or power to «ay the testator did not understand their meaning, or to put *70 a construction on them different from what has been long-received and affixed by law, we must say, the intention of the testator was to give an absolute fee simple to Eleazarus, and after his decease a fee simple in the same premises to-Adam, a disposition utterly illegal, impracticable and irreconcilable ; for having given a fee simple, the whole estate, in the first instance, in the premises, he had nothing further to give, he had no further power of disposal, unless, which was expressly and rightly disavowed at the bar, he had attached some legal contingency to the first estate whereby it might be terminated and a fee simple given over by *55] *way of executory devise, or unless by a direct or implied revocation; and how far that may be effected by subsequent words -will be hereafter examined.
The intention of the testator then to use the word heirs-,, in the devise to Eleazarus, in a sense different from its legal signification, is not shown, and of course the power of, the-court in certain cases to abridge or restrain its general,, legal and technical operation, cannot be exercised.
Another insuperable obstacle exists. The operation! the-court are called on to perform is not to reduce, limit, restrain or pare down the word, heirs, to its just extent and to the signification designed in its use by the testator, but to deny it any operation, to reject it altogether, to say the-testator used it absurdly, ignorantly, without meaning, purpose or intent. The plaintiff claims that by reason of the subsequent words, the devise to Eleazarus and his heirs-should be reduced to an estate for his life. Such an estate would have been created if the words “ and his heirs ” had -been omitted, and if the intention of the testator had been to create such estate, those words ought to have been-omitted. If then you reduce or abridge the estate of Eleazarus to an estate for life you must do it by rejecting totally those words, and not by modifying, qualifying or abridging their natural import and meaning.
On the argument at the bar it was contended by the-plaintiff’s counsel that the words “his heirs,” attached to- *71 the devise to Eleazarus were to be considered words of purchase, as words designating the persons of Adam and his heirs, in order thereby to sustain an inference that the estate to Eleazarus was only for life. But there is nothing in the will to shew clearly and conclusively that the words, in themselves words of limitation, are used as words of purchase, without which they can never so operate. Moreover, if Adam should have taken as a purchaser he must have taken a joint estate with his father, 6 Co. 17, Wild’s case, which most manifestly was never intended, and was on the argument expressly disavowed. Again, the subsequent express devise to Adam, nominatim, most conclusively proves that he was not designated by the term, heirs.
2. The second ground relied on by the plaintiff’s counsel is that if the devise in fee simple to Eleazarus, and the devise in fee simple to Adam, after the decease of Eleazarus cannot be reconciled so as to reduce the former to an estate for life, the latter *must prevail, because in wills [*56 where there are different devises of the same thing a subsequent revokes and supersedes a former one. This doctrine, however, does not appear to be well settled. It is, indeed, thus laid down by Lord Coke, Co. Lit. 112, b. But Hargrave in his note on this passage (Note 144,) says, there is a great contrariety in the books on the effect of two inconsistent devises in the same will. Some hold with Lord Coke that the second devise revokes the first; others think 'that both devises are void on account of the repugnancy; but the opinion supported by the greatest number of authorities is that the two devisees shall take in moieties. In 3 Atkyns 493, Lord Hardwicke says, The law presumes that a testator even in making his will may vary his intention, as suppose a man gives a farm in Dale to A. and his heirs, in one part of the will, and in another to B. and his heirs, it has been held by the old books to be a revocation, but latterly construed either a joint tenancy or tenancy in common according to the limitation. The remark of the *72 Lord Chancellor as to the old books may be generally but is not universally true, for in 3 Bulstrode l05, it is laid ■down, “ If a man in the first part of his will doth devise his land to I. S. and in the latter part of his will he doth devise the same to I. N., the only way to make all the words in the will to stand is to make them both have a joint estate in the land.” It is not, however, necessary on the present occasion to examine which is right, the rule of the old books, or the rule of later times and of the greatest number of authorities, for it is manifest from the will before ns there could be no joint estate, since Adam was not to take until the decease of Eleazarus. Nor does the rule, whatever it may be, extend as was suggested at the bar, to personal estate only. The cases in 5 and 6 Vezey relate, it is true, to personalty. But Bulstrode and Plowden and Coke and Hardwieke all apply the rule to real estate. Taking then the rule to have existence, and it surely has existence where a joint estate cannot be raised, and that it is a rule applicable to real estate, let us understand the terms of the rule and we shall then see whether it can fasten itself on the will before us. What is meant by different devises, clashing clauses, inconsistent intents? Lord' Hardwieke, as we have seen, exemplifies them by the giving of a farm to A. and his heirs in one part of the will, and in another to B. ánd his heirs. Plowden, thus — If in the premises of the will A. devise his land to B. in fee and in the end of the will he devise it to 0. *57] *in fee. Plowd. 541. Godolphin, thus, “ If a man devise long acre in fee or his white horse, (having but one of each) to A. B., and after by the same will or another will doth devise the same to C. D.” Godolph. Or. Leg. 461. Now these cases, it is evident, are different devises of the same premises, and of the same estate, to exist and take effect in those premises at the same time, and are wholly variant from different limitations of the estate in the premises. . In the former cases there is a first and last intent, on *73 which the rule can operate. In the latter there exists but a single intent. Now the case before us does not come within the terms of- the rule respecting different devises. It is a limitation over after a previous limitation. And here the rule of all the books is very different. If the limitation over be repugnant to the preceding estate, or if it be .a limitation over after an estate in fee-simple, unless such estate be determinable on some legal and timely contingency, the limitation over is void. A number of cases have already been cited in which the limitations over were held void. In Wood’s case, 1 Bulstrode 61, a man having three sons devised one parcel of his lands to each of his sons, and further, that if any of his sons do die, then the one of them to be heir unto the other; the question was who should have dhe land devised to the eldest son; his heir, or his two brothers. The court held that the will was good for the eldest son, and that his issue should have the land, and that the subsequent clause in the will after the particular devises, viz., that the one shall be heir to the other, is repugnant in itself to the other part of the will, and so the same clause is merely void in law. The following cases also sustain the same principle: Year Book, 19 Hen. 8, fol. 8, pl. 6; The Attorney General v. Hall, Fitsg. 314; Ide v. Ide, 5 Mass. Rep. 500; Jackson v. Bull, 10 John. 19.
Upon the whole I am of-opinion that Eleazarus took an estate in fee-simple, and not an estate for life, in the premises in question, and therefore judgment should be rendered for the defendant.
Judgment for the defendant.